**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-1253

ROBERT E. WRIGHT,

    Plaintiff,

v.

MARK KRAFT, individually
MICHAEL HOGAN, individually,

    Defendants.

---

COMPLAINT WITH JURY DEMAND

---

Plaintiff Dr. Robert E. Wright (the "Plaintiff" or "Dr. Wright"), by and through his attorneys, Allen Vellone Wolf Helfrich & Factor P.C., for his Complaint with Jury Demand, against Defendants Dr. Mark Kraft ("Dr. Kraft") and Michael Hogan ("Mr. Hogan"), states as follows:

**I. Parties, Jurisdiction, and Venue.**

1. The Court has subject matter jurisdiction, pursuant to 28 U.S.C. § 1332, given that the amount in controversy exceeds $75,000 and the parties are completely diverse:

    a. Plaintiff Robert E. Wright is an individual who resides at 925 Lincoln Street, #15, Denver, Colorado 80203.

    b. Defendant Mark Kraft is an individual, whose last known address, upon information and belief, is 2922 Red Arrow Drive, Las Vegas, Nevada

89117.

    c. Defendant Michael Hogan is an individual, who upon information and belief resides at 8904 Chalk Knoll Drive, Austin, Texas 78735.

2. The Court has personal jurisdiction over the Defendants, pursuant to C.R.S. § 13-1-124, given that

    a. Dr. Kraft's filing of an unfounded, defamatory, false, and abusive proof of claim in a Colorado federal bankruptcy court was the commission of a tortious act within the state.

    b. Mr. Hogan's unfounded, defamatory, false and abusive complaint with the Denver County District Attorney was the commission of a tortious act within the state.

    c. Mr. Hogan's directing of slanderous, libelous, and defamatory statements on multiple occasions into Colorado constitutes the commission of tortious acts within the state.

3. Venue is proper, pursuant to 28 U.S.C. § 1391, which provides that "A civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," given that the tortious conduct alleged was directed at or occurred in Colorado.

## II. General Allegations.

### *Founding Nimbus Concepts, LLC*

1. In May 2009, Dr. Wright invented a radiofrequency ablation device to manage chronic pain through the temperature-controlled destruction of targeted nerves.

2.	Dr. Wright, along with other board members, formed Nimbus Concepts, LLLP (Nimbus Concepts) in June 2009 to market, sell, and promote Dr. Wright's radiofrequency ablation device. In January 2011, the company was converted to a Delaware LLC with a Second Amended and Restated Limited Liability Company Agreement adopted effective as of November 30, 2011.

3.	Bryan Holley, a resident of Austin, Texas, was appointed the chief executive officer of Nimbus Concepts in 2012. Mr. Holley established the company's first bank account in Austin and made business decisions for the company.

4.	For the purposes of economic efficiencies, Mr. Holley determined that Nimbus Concepts should share some expense with Denver Pain Management and Maxter, LLC, two other businesses in which Dr. Wright or his wife, Carla Wright, had ownership. Much of the human resources expenses of Nimbus Concepts were borne by Denver Pain Management and Maxter, LLC. Layla Jaramillo was the bookkeeper for both Nimbus Concepts and Denver Pain Management. All expenses of Nimbus Concepts were tracked and Denver Pain Management and Maxter were reimbursed or credited.

5.	Also for the purposes of economic efficiencies, and given that Nimbus Concepts was still a new company with limited capital, Dr. Wright was asked to advance some expenses on his personal credit card, for which he was reimbursed or credited. Dr. Wright's provision of this credit facility became far more significant following Biomerics withdrawing its provision of a credit facility for the production of the radiofrequency ablation devices, in mid-2014, after which point the approximately

$45,000 to $60,000 per month in cost of goods was put on Dr. Wright's America Express credit card and Dr. Wright was reimbursed, rather than Biomerics, upon delivery to and payment by the buyer.

6. While he was the chief executive officer of Nimbus Concepts, Mr. Holley solicited an investment in the company from Michael Hogan, who was a personal friend of Mr. Holley's in Texas.

### *Dr. Kraft and Mr. Hogan's Management of Nimbus Concepts*

7. In early 2014, Mr. Holley was asked by the board of directors to resign as the chief executive officer of Nimbus Concepts. Board member Mark Kraft assumed the role as interim chief executive officer.

8. Following Mr. Holley's resignation, Mr. Hogan, an investor, assumed the role of chief financial officer and following early conversations with Dr. Kraft, Mr. Hogan assumed the role of manager, with responsibilities to handle the business, identify new distribution channels, and retain a secondary manufacturer.

9. As the manager and the chief financial officer, Mr. Hogan was regularly provided with financial documents from the accountant for Nimbus Concepts, Ms. Jaramillo. Ms. Jaramillo provided Mr. Hogan whatever financial records he requested in order for him to oversee the company's financial performance.

10. Following Mr. Holley's resignation, and given Ms. Jaramillo's day-to-day management of the Nimbus Concepts's accounting and financials, Mr. Hogan suggested that the company's bank account be moved from an Austin, Texas bank, which had been convenient for Mr. Holley, to a Denver, Colorado bank for Ms.

Jaramillo's convenience. Around that time, Mr. Hogan also requested that Dr. Wright, as a director, be the signatory on company checks, given his proximity to Ms. Jaramillo.

11. Mr. Hogan conducted an in-depth forensic-like analysis of the financials around the time he assumed the roles of chief financial officer and manager, which included his awareness and approval of the reimbursements made to Denver Pain Management, Maxter, and Dr. Wright, effectively concurring with Mr. Holley's assessment that the cost savings and access to capital afforded though reimbursing Denver Pain Management, Maxter, and Dr. Wright was important and, perhaps, essential to Nimbus Concepts's ability to operate.

12. On numerous occasions, Dr. Wright communicated, orally and in writing, to Ms. Jaramillo, that all business and financial decisions needed Mr. Hogan's approval.

13. On February 27, 2015, Mr. Hogan emailed Dr. Wright for the purpose of discussing how to make Nimbus Concepts more likely to attract investment. In that email, Mr. Hogan offered, "as the managing member" to put a "statement in writing . . . on behalf of the company."

14. In late 2015, Mr. Hogan announced his plans to step down from active management of Nimbus Concepts, given that he and his wife were moving to Africa.

15. In December 2015, in preparation for his departure as manager of Nimbus Concepts, Mr. Hogan communicated to the board of directors of Nimbus Concepts that the financials were entirely satisfactory and certified their accuracy.

16. Despite his planned move to Africa, Mr. Hogan expressed an interest and willingness to participate in the efforts of the board of directors to sell Nimbus Concepts

or all its assets.

17. In early 2016, investor Clifford Jack expressed an interest in purchasing Nimbus Concepts. Mr. Hogan went through an extensive due diligence process with Mr. Jack related to the potential acquisition, including, reviewing the accounting and financials that lasted for months, until the potential acquisition by Mr. Jack fell through in September 2016.

18. Within a few days of the potential purchase by Mr. Jack falling though, Mr. Hogan began to make false and inconsistent accusations against Dr. Wright. The varied accusation of theft ranged from an accusation that Dr. Wright had stolen $11,000 to an accusation that Dr. Wright had stolen $2 million, with various other accusation of amounts in between those two amounts.

19. Following the potential purchase by Mr. Jack falling though, discussions were resumed between Nimbus Concepts and Travis Sessions about Mr. Sessions purchasing Nimbus Concepts or its assets. These negotiations continued for months into 2017, but eventually fell through.

20. Also following the potential purchase by Mr. Jack falling though, Mr. Hogan communicated to Dr. Wright that his wife was insisting that he sell his interest in Nimbus Concepts and that it had been his wife's money that he had used to invest in the first place, though Dr. Wright never confirmed the source of the funds for Mr. Hogan's investment, Mr. Hogan subsequently became intent on recovering his entire investment by any means necessary.

### *Dr. Wright's Treatment for Substance Abuse*

21.     In 2004 and 2007 Dr. Wright entered a rehabilitation facility for treatment of substance abuse. As a result, Dr. Wright's medical license was briefly suspended, and then reinstated with probationary terms. The probationary terms expired in 2013. Dr. Wright has had no lapses of substance abuse since his recovery in 2007.

22.     In early 2014, Dr. Wright developed a spinal condition that caused him significant pain, which would eventually require surgery. To manage the pain, prior to surgery, Dr. Wright's physician prescribed pain medication. Dr. Wright's prescribing physician knew of Dr. Wright's past treatment for substance abuse and monitored him accordingly.

23.     Following spinal surgery on July 25, 2016 and the resolution of subsequent blood clotting complications that lasted into September 2016, Dr. Wright was taken off physician prescribed pain medication. Dr. Wright neither used nor has been prescribed pain medication since September 2016.

24.     In August 2016, based on his lawful and proper use of prescribed pain medication, though out of an abundance of caution and professional responsibility, Dr. Wright voluntarily entered into an agreement with Colorado Medical Board whereby he would not practice as a physician until completing an evaluative and rehabilitative program.

25.     In furtherance of his agreement with the Colorado Medical Board, Dr. Wright spent five days in December 2016 at a rehabilitation facility receiving continual testing, including a urine sample test administered on December 14, 2016, which

resulted negative for addictive substances.

26.  Following his time at the rehabilitation facility, Dr. Wright agreed to be tested for addictive substances, at least once per week, by the Colorado Physicians Health Panel. All tests resulted negative for addictive substances.

27.  Also, in furtherance of his agreement with the Colorado Medical Board, Dr. Wright spent ninety days at the University of Colorado's Center for Dependency, Addiction and Rehabilitation, where he was continually tested. All tests resulted negative for addictive substances.

28.  Beyond the scope of his agreement with the Colorado Medical Board, Dr. Wright himself requested to take an especially accurate and historically-informing nine-panel nail test for addictive substances, the results of which were negative for addictive substances.

### *Defamation and Abuse of Process in Biomerics Acquisition Correspondence*

29.  In September 2016, the accountant for Nimbus Concepts, Layla Jaramillo, received an invoice from CPA Global for service provided to Nimbus Concepts. On October 7, 2016, Mr. Hogan sent an email forwarding the CPA Global invoice to Dr. Wright, with Mark Kraft, Ken Allan, and Scott Brandt copied on the email, in which Mr. Hogan imputed to Dr. Wright the commission of a crime.

30.  On October 26, 2016, Mr. Hogan sent an email, the recipients of which were Mark Kraft and Dr. Wright, in which Mr. Hogan imputed to the accountant for Nimbus Concepts and Dr. Wright the commission of a crime.

31.  On November 23, 2016, Mr. Hogan sent an email to Dr. Wright with an

8

attached letter to Dr. Wright from the four members of a special committee of the Nimbus Concepts's board of directors, comprised of Scott Brandt, Mark Kraft, Michael Hogan, and Kenneth Allan. The letter imputed to Dr. Wright the commission of a crime.

32. The letter sent by email to Dr. Wright on November 23, 2016 from the special committee of the Nimbus Concepts's board of directors, also stated, "The Special Committee has made a complaint with the Denver County District Attorney." The letter also indicated that the complaint with the Denver County District Attorney was based on the false and defamatory conduct which Mr. Hogan imputed to Dr. Wright.

33. On November 29, 2016, Mr. Hogan sent an email to Dr. Wright and Robert Preeo, copied to Ken Allan, Scott Brandt, and Mark Kraft, and stated to Dr. Wright, "You were removed from the Board and all management of the company at tonight's meeting. . .. You are currently under investigation by the Denver County [District Attorney] . . .. Please contact Mary Salazar at the Denver [District Attorney's] office for more information."

34. On December 6, 2016, Dr. Kraft sent an email to Dr. Wright and his wife Carla Wright, and copied Scott Brandt, Michael Hogan, and Ken Allan on the email, in which Dr. Kraft directed statements at and about Dr. Wright which would be unmistakably recognized as injurious to Dr. Wright's reputation and would affect his business.

35. On December 14, 2016, Mr. Hogan emailed Travis Sessions, and copied Andy Montero, Ken Allan, Scott Brandt, Mark Kraft, and Dr. Wright on the email, in which Mr. Hogan, in reference to the closing of Biomerics's purchase of all of Nimbus

Concepts's assets, directed statements at and about Dr. Wright which would be unmistakably recognized as injurious to Dr. Wright's reputation and would affect his business.

36. Later, also on December 14, 2016, Dr. Wright replied to Mr. Hogan, to dispute what Mr. Hogan had emailed to Mr. Sessions. After a series of email exchanges, Mr. Hogan, in an email sent to Dr. Wright, with Ken Allan, Scott Brandt, Mark Kraft, and Travis Sessions copied on the email, imputing to Dr. Wright morally opprobrious conduct in statements which would be unmistakably recognized as injurious to Dr. Wright's reputation and would affect his business.

37. On December 20, 2016, Mr. Hogan sent an email, the recipient of which was Travis Sessions, with Ken Allan, Scott Brandt, Mark Kraft, and Dr. Wright copied on the email, in which Mr. Hogan communicated to Mr. Sessions, the imputation of Dr. Wright in the commission of a crime.

38. On January 19, 2017, Mr. Hogan sent an email, the recipients of which were Robert Preeo, Scott Brandt, Mark Kraft, and Dr. Wright, in which Mr. Hogan imputed to Dr. Wright the commission of a crime and other conduct in statements which would be unmistakably recognized as injurious to Dr. Wright's reputation and would affect his business.

39. On April 13, 2017 Mr. Hogan send an email, the recipients of which were Barry G. Scholl, Robert Preeo, Scott Brandt, Claudine Brandt, Mark Kraft, Ken Allan, Deborah Ast, Aaron K. Calodney, Robert Attai, Tim Houden, Clint M. Hanni, Alexandra M. Westover, and Dr. Wright, in which Mr. Hogan stated that Dr. Wright "is to receive

NOTHING from the sale of the company" and" was to assume all tax liabilities" based on conduct described by Hogan imputing to Dr. Wright the commission of a crime

40. On April 18, 2017, Mr. Hogan sent an email, the recipients of which were Matthew Roth, Barry G. Scholl, and Clint M. Hanni, with an attached letter which imputed to Dr. Wright the commission of a crime and other morally opprobrious conduct in statements which would be unmistakably recognized as injurious to Dr. Wright's reputation and would affect his business.

41. On May 23, 2017, Mr. Hogan sent an email regarding the terms of the potential purchase of Nimbus Concepts by Biomerics. The recipient of the email was Travis Sessions, with Dr. Wright copied on the email. In the email Mr. Hogan stated his position, that he "will not sign on a deal that pays [Dr. Wright] anything."

42. Sometime in or around early June 2017, Biomerics discontinued its pursuit to purchase all assets of Nimbus Concepts. In an email correspondence related to that withdrawal, On June 17, 2017, Mr. Hogan sent an email, the recipients of which were Ken Allan, Barry G. Scholl, Clint M. Hanni, Scott Brandt, Tim Houden, Aaron K. Calodney, Mark Kraft, and Dr. Wright, in which Mr. Hogan imputed to Dr. Wright the commission of a crime and other morally opprobrious conduct in statements which would be unmistakably recognized as injurious to Dr. Wright's reputation and would affect his business.

43. Upon information and belief, Mr. Hogan directed his defamatory statements at Colorado and Utah, in order to affect Dr. Wright's reputation in the medical and business community in the states where Dr. Wright does a majority these

activities.

44.     Dr. Wright's relationship with Mr. Sessions is critically important to Dr. Wright and to his future in the world of medical devices.

45.     As a direct and proximate result of the libel per se a business opportunity worth more than in excess of $100,000 was lost.

### *Unfounded and False Proof of Claim in Dr. Wright's Colorado Bankruptcy Case*

46.     On June 2, 2017, Dr. Kraft filed a Form 410 Proof of Claim in the Chapter 11 bankruptcy of Robert and Carla Wright in the amount of $2 million, and stated as the basis for the claim, that Dr. Wright had "defrauded and stole money from Nimbus Concepts LLC while serving as a corporate officer."

### III.  Claims for Relief.

### *First Claim for Relief – Libel Per Se (Against Mr. Hogan)*

47.     The Plaintiff incorporates the allegations of all other paragraphs herein as if fully restated below.

48.     Mr. Hogan's written statement emailed to Dr. Wright on October 7, 2016, included a verifiably false statement which imputes to Dr. Wright the commission of a crime and affects Dr. Wright in his trade or business.

49.     Mr. Hogan's statement about Dr. Wright was communicated to and understood by third parties, including Mark Kraft, Ken Allan, and Scott Brandt.

50.     Mr. Hogan made this statement intentionally, willfully, or negligently.

51.     Mr. Hogan' verifiably false statement to third parties caused Dr. Wright reputational damages and extreme emotional distress.

### *Second Claim for Relief – Libel Per Se (Against Mr. Hogan)*

52. The Plaintiff incorporates the allegations of all other paragraphs herein as if fully restated below.

53. Mr. Hogan's written statement emailed to Dr. Wright on October 26, 2016, was a verifiably false statement imputing to Dr. Wright the commission of a crime and affecting Dr. Wright in his trade or business.

54. Mr. Hogan's statement about Dr. Wright was communicated to and understood by a third party, including Mark Kraft.

55. Mr. Hogan made this statement intentionally, willfully, or negligently.

56. Mr. Hogan' verifiably false statement to third parties caused Dr. Wright reputational damages and extreme emotional distress.

### *Third Claim for Relief – Libel Per Se (Against Mr. Hogan)*

57. The Plaintiff incorporates the allegations of all other paragraphs herein as if fully restated below.

58. Mr. Hogan's written statement in an attached letter emailed to Dr. Wright on November 23, 2016 was a verifiably false statement imputing to Dr. Wright the commission of a crime and affecting Dr. Wright in his trade or business.

59. Mr. Hogan's statement about Dr. Wright was presumably communicated to and understood by the third-party co-signatories, Scott Brandt, Mark Kraft, and Kenneth Allan.

60. Mr. Hogan made this statement intentionally, willfully, or negligently.

61. Mr. Hogan' verifiably false statement to third parties caused Dr. Wright

reputational damages and extreme emotional distress.

### *Fourth Claim for Relief – Libel Per Se (Against Mr. Hogan)*

62. The Plaintiff incorporates the allegations of all other paragraphs herein as if fully restated below.

63. Mr. Hogan's written statement emailed to Dr. Wright on December 14, 2016 was a verifiably false statement imputing to Dr. Wright the commission of a crime and affecting Dr. Wright in his trade or business.

64. Mr. Hogan's statement about Dr. Wright was communicated to and understood by third parties, including Ken Allan, Scott Brandt, Mark Kraft, and Travis Sessions

65. Mr. Hogan made this statement intentionally, willfully, or negligently.

66. Mr. Hogan' verifiably false statement to third parties caused Dr. Wright reputational damages and extreme emotional distress.

### *Fifth Claim for Relief – Libel Per Se (Against Mr. Hogan)*

67. The Plaintiff incorporates the allegations of all other paragraphs herein as if fully restated below.

68. Mr. Hogan's written statement emailed to Dr. Wright on December 20, 2016 was a verifiably false statement imputing to Dr. Wright the commission of a crime and affecting Dr. Wright in his trade or business.

69. Mr. Hogan's statement about Dr. Wright was communicated to and understood by third parties, including Ken Allan, Scott Brandt, Mark Kraft, and Travis Sessions.

14

70. Mr. Hogan made this statement intentionally, willfully, or negligently.

71. Mr. Hogan' verifiably false statement to third parties caused Dr. Wright reputational damages and extreme emotional distress.

### *Sixth Claim for Relief – Libel Per Se (Against Mr. Hogan)*

72. The Plaintiff incorporates the allegations of all other paragraphs herein as if fully restated below.

73. Mr. Hogan's written statement emailed to Dr. Wright on January 19, 2017 was a verifiably false statement imputing to Dr. Wright the commission of a crime and affecting Dr. Wright in his trade or business.

74. Mr. Hogan's statement about Dr. Wright was communicated to and understood by third parties, including Robert Preeo, Scott Brandt, and Mark Kraft.

75. Mr. Hogan made this statement intentionally, willfully, or negligently.

76. Mr. Hogan' verifiably false statement to third parties caused Dr. Wright reputational damages and extreme emotional distress.

### *Seventh Claim for Relief – Libel Per Se (Against Mr. Hogan)*

77. The Plaintiff incorporates the allegations of all other paragraphs herein as if fully restated below.

78. Mr. Hogan's written statement emailed to Dr. Wright on April 13, 2017 was a verifiably false statement imputing to Dr. Wright the commission of a crime and affecting Dr. Wright in his trade or business.

79. Mr. Hogan's statement about Dr. Wright was communicated to and understood by third parties, including Barry G. Scholl, Robert Preeo, Scott Brandt,

Claudine Brandt, Mark Kraft, Ken Allan, Deborah Ast, Aaron K. Calodney, Robert Attai, Tim Houden, Clint M. Hanni, and Alexandra M. Westover.

80. Mr. Hogan made this statement intentionally, willfully, or negligently.

81. Mr. Hogan' verifiably false statement to third parties caused Dr. Wright reputational damages and extreme emotional distress.

### *Eighth Claim for Relief – Libel Per Se (Against Mr. Hogan)*

82. The Plaintiff incorporates the allegations of all other paragraphs herein as if fully restated below.

83. Mr. Hogan's written statement in an attached letter emailed to Dr. Wright on April 18, 2017 was a verifiably false statement imputing to Dr. Wright the commission of a crime and affecting Dr. Wright in his trade or business.

84. Mr. Hogan's statement about Dr. Wright was communicated to and understood by third parties, including Matthew Roth, Barry G. School, and Clint M. Hanni.

85. Mr. Hogan made this statement intentionally, willfully, or negligently.

86. Mr. Hogan' verifiably false statement to third parties caused Dr. Wright reputational damages and extreme emotional distress.

### *Ninth Claim for Relief – Libel Per Se (Against Mr. Hogan)*

87. The Plaintiff incorporates the allegations of all other paragraphs herein as if fully restated below.

88. Mr. Hogan's written statements emailed to Dr. Wright on June 17, 2017 were verifiably false statements imputing to Dr. Wright the commission of a crime and

affecting Dr. Wright in his trade or business.

89. Mr. Hogan's statements about Dr. Wright was communicated to and understood by third parties, including Ken Allan, Barry G. Scholl, Clint M. Hanni, Scott Brandt, Tim Houden, Aaron K. Calodney, and Mark Kraft.

90. Mr. Hogan made this statement intentionally, willfully, or negligently.

91. Mr. Hogan' verifiably false statement to third parties caused Dr. Wright reputational damages and extreme emotional distress.

### *Tenth Claim for Relief – Libel Per Se (Against Dr. Kraft)*

92. The Plaintiff incorporates the allegations of all other paragraphs herein as if fully restated below.

93. Dr. Kraft's written statement emailed to Dr. Wright on December 6, 2016, was a verifiably false statement affecting Dr. Wright in his trade or business.

94. Dr. Kraft's statement about Dr. Wright was communicated to and understood by the third parties including Carla Wright, Scott Brandt, Michael Hogan, and Ken Allan.

95. Dr. Kraft made this statement intentionally, willfully, or negligently.

96. Dr. Kraft's verifiably false statement to third parties caused Dr. Wright reputational damages and extreme emotional distress.

### *Eleventh Claim for Relief – Abuse Of Process (Against Mr. Hogan)*

97. The Plaintiff incorporates the allegations of all other paragraphs herein as if fully restated below.

98. Mr. Hogan intentionally caused a complaint to be filed with the Denver

17

County District Attorney based on unfounded allegations of financial crimes by Dr. Wright.

99. The principal reason Mr. Hogan caused a complaint to be filed with the Denver County District Attorney was other than to make the state aware that someone might have committed a crime Dr. Wright, but instead to pressure Dr. Wright to permit the sale of Nimbus Concepts with no portion of the sale proceeds going to Dr. Wright.

100. This abuse of the legal system cause Dr. Wright reputational damages and extreme emotional distress.

### *Twelfth Claim for Relief – Abuse Of Process (Against Dr. Kraft)*

101. The Plaintiff incorporates the allegations of all other paragraphs herein as if fully restated below.

102. Dr. Kraft intentionally caused an unfounded proof of claim to be filed on behalf of Nimbus Concepts in Dr. Wright's individual Chapter 11 bankruptcy.

103. The principal reason Dr. Kraft caused the proof of claim to be filed was for a purpose other than pursuing an interest in the debtors' Chapter 11 plan, but instead to pressure Dr. Wright to permit the sale of Nimbus Concepts with no portion of the sale proceeds going to Dr. Wright.

104. This abuse of the legal system cause Dr. Wright injuries, damages, and losses.

### *Thirteenth Claim for Relief – Intentional Infliction of Emotional Distress (Against All Defendants)*

105. The Plaintiff incorporates the allegations of all other paragraphs herein as if fully restated below.

106. Dr. Kraft and Mr. Hogan engaged in extreme and outrageous conduct

107. Dr. Kraft and Mr. Hogan engaged in this conduct recklessly or with the intent of causing Dr. Wright severe emotional distress.

108. Dr. Wright suffered severe emotional distress that was caused by the Defendants' extreme and outrageous conduct.

**WHEREFORE, having stated the above facts and claims, the Plaintiff prays for this Honorable Court to:**

a. Enter judgment in favor of the Plaintiff and against Defendants Mark Kraft and Michael Hogan with each claim;

b. Award the Plaintiff all general, consequential, and compensatory damages, including all legal expenses, such as litigation costs and attorneys' fees as allowable by law;

c. Award the Plaintiff pre-judgment interest and post-judgment interest, to the extent allowable by law; and

d. Award the Plaintiff such other and further relief which this Court deems just and proper.

**The Plaintiff demands a trial by jury on all issues so triable.**

DATED this 22th day of May 2018.

/s/ *Patrick D. Vellone*
**Patrick D. Vellone**, #15284
**Lance Henry**, #50864
Allen Vellone Wolf Helfrich & Factor P.C.
1600 Stout Street, Suite 1100
Denver, Colorado 80202
Telephone: (303) 534-4499
Email: pvellone@allen-vellone.com
Email: lhenry@allen-vellone.com

Attorneys for the Plaintiff